# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TONI DUVERGER | )<br>) |
| Plaintiffs, | ) Civil Action No. _____<br>) |
| v. | )<br>) JURY DEMAND (12) |
| DORMAN PRODUCTS, INC.<br>aka RB DISTRIBUTION, INC., | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

## COMPLAINT

COMES NOW the Plaintiff, Toni Duverger individually ("Plaintiff"), by and through undersigned counsel, would hereby propound this *Complaint* upon Defendant, Dorman Products, Inc ("Defendant") for the following causes of action.

## VENUE

Plaintiff Toni Duverger is and was a resident of Sumner County, Tennessee and was employed by and terminated from Dorman Products facility in Sumner County, Tennessee, where the events giving rise to this action occurred. Defendant Dorman Products is a Pennsylvania corporation engaged in commerce within the state of Tennessee and Sumner County specifically, and therefore this court is the appropriate venue pursuant to 28 U.S.C. § 1391.

## JURISDICTION

This Court has jurisdiction over the present cause of action as a matter of violation of Federal law, namely the violation of the American's with Disabilities Act and other federal laws relating to discrimination against disabled persons, as detailed below, and as such is a Federal question pursuant to 28 U.S.C. 1331 and specifically 42 U.S.C. § 12101. Plaintiff has fulfilled her procedural requirements by filing a charge with the Equal Employment Opportunity Commission on or about December and was issued a right to sue letter by the Equal Employment Opportunity Commission on or about August 3, 2021.

## FACTUAL HISTORY

1. Plaintiff was employed by Defendant in March of 2019 as a Distribution Specialist until she became disabled in a workplace accident, which has been settled by the Parties, on or about July 8th, 2019.
2. In that accident, Mrs. Duverger injured her rotator cuff, receiving medical leave and workmen's compensation for her injury.
3. Despite her injury, Plaintiff was repeatedly sent out onto the main work area at the urging of her superiors, where she was repeatedly asked to perform menial labor against her medical limitation of 15 pounds in the immediate aftermath of her injury.
4. After seeing a nurse practitioner, Plaintiff was referred to a specialist in her type of injury.
5. Plaintiff began treatment with Tennessee Orthopedic Alliance ("TOA"), where she was diagnosed with a torn rotator cuff, and significant scar tissue and impingement.

6. Plaintiff's attending physician at TOA stated that her scar tissue and exacerbated injury were the direct result of exceeding her limitations at her place of work.
7. After receiving her diagnosis, Plaintiff began working as a "backup clerk", an administrative position away from the Distribution Specialist role.
8. As part of her duties as a backup clerk, Plaintiff fulfilled administrative tasks, including filing, scanning, and other types of administrative tasks.
9. During this time, Plaintiff was informed she had been selected for a full time clerkship position, for which she applied, and was confirmed by no less than three of her supervisors.
10. Plaintiff had her email changed, and trained for three days in the new position to which she had been promoted.
11. Plaintiff was later informed that she was not a full time clerk, and demoted to backup clerk again.
12. While performing her duties as a backup clerk, Plaintiff was sent to take inventory, a duty which involved pushing a wheeled cart with an inoperable wheel, and lifting a scanning unit that exceeded her limitation.
13. Plaintiff underwent surgery on her rotator cuff to remove the scar tissue, as well as repair the torn rotator cuff.
14. Even with these operations, Plaintiff reached her Maximum Medical Improvement ("MMI") on July 20th, 2020, with a seven (7) pound frequent lifting limit and a fifteen (15) pound lifting limit maximum.

15. Plaintiff undertook employment as a backup clerk from October of 2019 until August of 2020, when she received a letter indicating her employment would be terminated on August 21st, 2020.

16. In said letter, Plaintiff was informed that she was being terminated due to her disability and the inability of Defendant to accommodate her disability.

## COUNT 1: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

17. Plaintiff incorporates the facts and allegations in paragraphs 1-16 herein by reference as if set forth verbatim.

18. Plaintiff is a disabled person in accordance with the definition set forth in the Americans with Disabilities Act of 1990 ("the Act") and 42 U.S.C. § 12102 as due to her injury and physical limitations she cannot lift above fifteen (15) pounds nor lift her arm vertically above her head, a limitation which substantially impacts physical aspects of her daily life and work.

19. The Act makes discrimination in employment against an individual on the basis of their disability an illegal act.

20. Plaintiff was fired from her position as a backup clerk with Dorman Products due to her disability, despite no evidence that the same impacted her performance, including reprimands or failed assignments in that role.

21. Plaintiff would show that she performed her work adequately in that role from October of 2019 to August of 2020.

22. Further, Plaintiff would show that she was demoted from the full time clerk position for which she was qualified and achieved on the basis of her disability.

23. Defendant failed to reasonably accommodate Plaintiff by promoting her or keeping her in her position as a full-time clerk when said positions were available and Plaintiff was a qualified and suitable candidate for said positions.

## COUNT 2: HOSTILE WORK ENVIRONMENT

24. Plaintiff incorporates the facts and allegations of paragraphs 1-16 herein by reference as if set forth verbatim.
25. Plaintiff would show that the conditions in which she worked and the tasks she was subjected to by her supervisors were targeted towards her disability in an effort to force her to quit the company, and thereby constituted a hostile work environment.
26. Plaintiff would specifically show that subjecting her to taking inventory, by pushing a cart and lifting a heavy scanner, were designed to punish and degrade her based upon her disability, thereby violating the Act.

## COUNT 3: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

27. Plaintiff incorporates the facts and allegations of paragraphs 1-16 herein by reference as if set forth verbatim.
28. Plaintiff would show that Defendant knowingly and intentionally and/or recklessly inflicted emotional distress by the deliberate conduct and actions of Defendant's agents and employees by intentionally and/or recklessly forcing her to undertake job tasks that were degrading and painful due to her disability, the same resulting in serious mental injury to the Plaintiff and which were so outrageous that said actions cannot be tolerated by civilized society.

29. Said job tasks exacerbated her injury by increasing the amount of scar tissue and impingement of her injury.

30. Said conduct by Defendant was outrageous and has materially and mentally harmed Plaintiff physically, and caused great emotional distress and harm to Plaintiff.

\*\*\*

**WHEREFORE**, these premises considered, Plaintiff prays as follows:

1. That the Court find in favor of Plaintiff in this cause of action.

2. That Judgement issue against Defendant in the amount of $2,500,000;

3. That the Court award costs, and reasonable attorney's fees suffered by Plaintiff in bringing this action in accordance with 42 U.S.C. § 12205; and

4. Any further relief to which Plaintiff may be entitled by law and/or equity

Respectfully Submitted,

**THE SHIFFLETT LAW FIRM, PLLC**

G. Clark Shifflett III (031297)
Attorney for Plaintiff
120 Main Street
Portland, Tennessee 37148
(615) 325-6680 (telephone)
(615) 325-6559 (facsimile)
gshifflett3@shifflettlegal.com